UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 3:14-cv-293 |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | COMPLAINT |
| | ) | |
| DR. MARK LE and NORTHCROSS, | ) | |
| MEDICAL CENTER, PC, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff United States of America (the "United States" or the "Government"), by and through its attorney, Anne M. Tompkins, the United States Attorney for the Western District of North Carolina, brings this action against Dr. Mark Le and Northcross Medical Center, PC (collectively the "Defendants") alleging as follows:

PRELIMINARY STATEMENT

1. The United States brings this complaint under the False Claims Act, 31 U.S.C. §§ 3729-33, and common law, alleging that during the period from December 7, 2007 through March 31, 2013, Dr. Mark Le ("Dr. Le") and Northcross Medical Center, PC ("Northcross") billed Medicare and Medicaid for services (i) that were not medically necessary, (ii) that were not provided to patients, and (iii) that were provided to immediate family members or otherwise failed to comply with Medicare and Medicaid rules and regulations.

2. Dr. Le is a medical doctor who owned and controlled Northcross during the relevant time period. Northcross employed several doctors and multiple support staff. Northcross owned or leased multiple pieces of medical equipment used to conduct various tests and procedures on Dr. Le's patients.

1

3. Dr. Le obtained these machines so that he could order extensive testing and procedures on his patients and bill third party payers, including Medicare and Medicaid, for these tests and procedures. Dr. Le ordered tests and procedures that were not medically necessary for the sole purpose of obtaining payment from Medicare and Medicaid.

4. Defendants submitted claims to Medicare and Medicaid for procedures Dr. Le never conducted, including multiple hemorrhoid removals, allergy tests, echocardiograms, ultrasounds, enhanced external counterpulsation, and other procedures.

5. Defendants submitted claims to Medicare and Medicaid for services Dr. Le rendered to immediate family members in violation of Medicare payment conditions.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims brought under the False Claims Act pursuant to 31 U.S.C. §§ 3729-33, and over the claims brought under the common law pursuant to 28 U.S.C. §§ 1331 and 1345.

7. Venue lies in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391(b) and 1391(c), because Defendants are located in and do business in the district and because the acts upon which the claims in this action are based occurred in this District.

## PARTIES

8. Plaintiff is the United States of America on behalf of its agency the United States Department of Health and Human Services ("HHS").

9. Northcross is a North Carolina professional association and medical practice.

10. Dr. Le is a physician, and a resident of the State of North Carolina. During all times relevant to this case, Dr. Le was the President of Northcross and was responsible for the Northcross's operations and for its charges to Medicare and Medicaid.

## STATUTORY AND REGULATORY BACKGROUND

*The False Claims Act*

11. The False Claims Act ("FCA") provides in pertinent part that:

(a) Any person who –

    (1) Knowingly presents, or causes to be presented, a false or fraudulent claims for payment or approval; [or]
    (2) Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; to get a false or fraudulent claim paid or approved by the Government;
……
is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410)), plus 3 times the amount of damages which the Government sustains because of the act of the that person.

(b) For purposes of this section,

    (1) the terms "knowing" and "knowingly"

        (A) mean that a person, with respect to information –

            (i) has actual knowledge of the information;
            (ii) acts in deliberate ignorance of the truth or falsity of the information; or
            (iii) acts in reckless disregard of the truth or falsity of the information, and

        (B) requires no proof of specific intent to defraud….

31 U.S.C. § 3729(a), (b).

*Operation of The Medicare Program*

12. Title XVIII of the Social Security Act of 1942, 42 U.S.C. §§ 1395 *et seq.*, establishes the Health Insurance for the Aged and Disabled Program, popularly known as the Medicare Program. Medicare is administered by the Secretary of HHS through Centers for Medicare and Medicaid Services ("CMS"), a component of HHS.

3

13. The Medicare Program is federally subsidized health insurance system for disabled person or persons who are 65 years old or older and is comprised of four parts – Parts A through D. Medicare Parts A, C and D are not directly at issue in this case. Medicare Part B reimburses physicians charges for various medical services including outpatient medical care typically provided by a physician.

14. Medicare Part B is funded by insurance premiums paid by enrolled Medicare beneficiaries and contributions from the federal treasury. Eligible individuals who are age 65 or older, or disabled, may enroll in Part B to obtain benefits in return for monthly premiums as established by HHS. Payments under the Medicare programs, however, are often made directly to medical service providers rather than to the patient (the "beneficiary"). This occurs when the provider accepts assignment of the right to payment from the beneficiary. In that case the provider submits the bill directly to Medicare for payment.

15. Medicare enters into provider agreements with medical service providers to establish their eligibility to participate in the program. In order to be eligible for payment under the program physicians must certify:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to me… The Medicare laws, regulations, and program instructions are available through a fee-for-service contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions…

CMS Form 855I.

16. Dr. Le was required to make and comply with this certification in order to be eligible to submit claims to Medicare.

17. The United States provides reimbursement for Medicare claims through CMS. CMS, in turn, contracts with private insurance carriers (referred to as a Medicare Administrative

Contractor or "MAC") to administer, process and pay Part B claims from the Federal Supplemental Medical Insurance Trust Funds (the "Part B Trust Fund"). In this capacity, the MAC acts on behalf of CMS.

18. Medical providers are required to submit claims to the MAC for the area in which the services are rendered. In submitting these claims, medical providers are required to identify the services they performed by using the codes contained in the American Medical Association's Current Procedural Terminology manual, which are commonly referred to as "CPT" codes. Upon receiving the provider's claims, the MAC, applying its own and CMS policies, determines whether a procedure or service is adequately documented, whether it is medically necessary and whether or not the claim otherwise qualifies for payment. The MAC also computes the proper amount of the reimbursement for qualified claims.

19. Medicare reimbursement to providers varies depending on the type, level and complexity of the services rendered. This information is reflected in the CPT code included in the claims submitted to the MAC. Northcross, through its billing company, submits it claims to the MAC electronically. Before the MAC accepts electronically-submitted claims, each provider is required to agree in writing that it is responsible for the accuracy of the Medicare claims submitted on its behalf and that all claims submitted under its provider number will be accurate, complete and truthful. Prior to electronic submission of claims, providers submit hard copy certifications of the accuracy of their claims for reimbursement to Medicare.

20. A medical provider has a duty to have knowledge of the statutes, regulations and guidelines regarding coverage for Medicare services.

21. Medicare covers only reasonable and necessary medical services. 42 U.S.C. § 1395y(a)(1(A).

22. Providers must provide economical medical services, and then, only when, and to the extent, medically necessary. 42 U.S.C. § 1320c-5(a)(1).

23. The federal Medicare regulation excludes from payment services that are not reasonable and necessary. 42 C.F.R. § 411.15(k)(1).

*Operation of the Medicaid Program*

24. The Medicaid program was also created in 1965 as part of the Social Security Act, which authorized federal grants to states for medical assistance to low-income, blind, or disabled persons, or to members of families with Medicaid-eligible dependent children or qualified pregnant women or children. The Medicaid Program was established by Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq*.

25. The Medicaid program is jointly financed by the federal and state governments. CMS administers Medicaid on the federal level. Within broad federal rules, each state determines eligible groups, types and ranges of services, payments levels for services, and administrative and operating procedures. The state directly pays providers, with the state obtaining the federal share of the payment from accounts that draw on the United States treasury. 42 C.F.R. §§ 430.0-430.3. The federal share of Medicaid expenditures varies by state and can fluctuate annually.

26. In North Carolina, the Medicaid Program is administered by the Division of Medical Assistance ("DMA"), a component of the North Carolina Department of Health and Human Services. DMA contracts with a fiscal intermediary to receive, process and pay claims for services under the Medicaid program. HHS periodically reimburses DMA for the federal share of all qualified Medicaid claims.

27. A medical provider must submit an application to the Medicaid Program to enroll as a Medicaid provider. After a medical provider becomes a Medicaid provider, it may submit

claims for reimbursement to the fiscal intermediary. For a claim to be paid, the provider must certify, among other things, that the claims is "true, accurate and complete" and that the services for which the reimbursement is sought were medically indicated and necessary to the health of the patient and were personally furnished by the provider.

28. The Medicaid claims submitted to the fiscal intermediary and DMA include identifying information about the patient, the date and nature of the service provided, the charge for the service provided, the provider and provider certifications.

29. In general, DMA relies on the claims and certifications submitted by providers, and pays qualified providers at a predetermined rate for a specific service.

30. During the relevant time period, Defendants were Medicaid providers, provided medical services to people covered by the Medicaid Program, and submitted claims for payment to the fiscal intermediary for these services.

31. By participating in the Medicaid Program, Defendants agreed to follow the requirements set forth in the DMA Provider Manual, applicable state and federal Medicaid law and regulations, DMA policy, regulations and bulletins, and DMA's billing guidance.

## FACTUAL ALLEGATIONS

32. Defendants knowingly submitted claims for payment which were false or fraudulent by billing for (1) tests and procedures that were not medically necessary, (2) tests and procedures that were never performed on patients, and 3) tests and procedures performed on immediate family members.

33. Dr. Le owned or leased many diagnostic test machines including, but not limited to, allergy test machines, enhanced external counterpulsation treatment machines, echocardiogram machines, ultrasound machines and blood testing machines.

7

34. Dr. Le purchased or leased these machines to capture the financial benefit of ordering medically unnecessary tests.

35. Because Dr. Le did not have to refer patients to other doctors for tests and procedures, Dr. Le reaped all financial benefit from the medically unnecessary tests conducted in his office.

36. Dr. Le told members of his staff that he needed to order excessive tests because he had a business to run and he needed to pay for the machines.

37. Dr. Le ordered employees to include non-existent symptoms in patient charts to justify unnecessary medical procedures.

38. Review of Dr. Le's patients' medical records reveals that the majority of tests and procedures Dr. Le performed on patients were not medically necessary.

39. Defendants knowingly submitted claims to Medicare and Medicaid for services they knew were not medically necessary.

40. Defendants knowingly submitted claims to Medicare and Medicaid for services that they knew Dr. Le never performed.

41. As an example, Defendants submitted claims to Medicare for a hemorrhoid removal and skin tag removals for a patient who was in a coma in a hospital in a different part of the state on the day Dr. Le claims to have provided the services.

42. Defendants submitted claims to Medicare for hundreds of enhanced external counterpulsation treatments that never occurred.

43. Dr. Le knew these procedures never occurred, but submitted the claims to Medicare to obtain the reimbursement.

8

Case 3:14-cv-00293-MOC-DCK   Document 1   Filed 06/04/14   Page 8 of 13

44. Defendants submitted thousands of claims to Medicare and Medicaid for services supposedly rendered to immediate family members of Dr. Le.

45. Medicare does not reimburse a physician for services provided to immediate family members.

46. Defendants knowingly submitted claims to Medicare and Medicaid that were not eligible for payment under Medicare and Medicaid regulations.

**FIRST CAUSE OF ACTION**:
(False Claims Act: Presentation of False Claims)
(31 U.S.C. § 3729(a)(1))

47. The United States realleges and incorporates paragraphs 1 through 46 as if fully stated herein.

48. Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval to the United States (i.e., the electronic claims submitted to Medicare and Medicaid).

49. These false or fraudulent claims caused damage to the United States, which is entitled to statutory damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

**SECOND CAUSE OF ACTION**:
(False Claims Act: Making of Using a False Record or Statement)
(31 U.S.C. § 3729(a)(2))

50. The United States realleges and incorporates paragraphs 1 through 49 as if fully stated herein.

51. Defendants knowingly made, used, or caused to be made or used, false records or false statements material to a false or fraudulent claims.

9

52. These false or fraudulent records and statements made by the Defendants caused damages to the United States, which is entitled to statutory damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

### THIRD CAUSE OF ACTION
(Common Law: Fraud)

53. The United States realleges and incorporates paragraphs 1 through 52 as if fully stated herein.

54. The actions described herein, including the submission of false claims and records and the failure to report known material information to the United States, constitute false statement or omissions of material facts.

55. Such false statements or omissions were made by Defendants with the intent to deceive the United States.

56. The United States was deceived by these false statements and material omissions.

57. The United States was damaged by these false statements and omissions in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
(Common Law: Negligence)

58. The United States realleges and incorporates paragraphs 1 through 57 as if fully stated herein.

59. The United States seeks relief against defendants to recover monies paid because of Defendants' negligence.

60. Defendants were negligent in failing to comply with Medicare and Medicaid rules and regulations relating to payment for the services they claim to have provided. Defendants had a duty to know and follow the Medicare and Medicaid rules and regulations.

61. The United States made substantial Medicare and Medicaid payment that would not have been made but for Defendants' misrepresentation that the services were provided consistent with the applicable Medicare and Medicaid rules and regulations even though those rules and regulations had not been complied with.

62. By reason of those false claims, the United States has sustained damages in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
(Common Law: Payment Under Mistake of Fact)

63. The United States realleges and incorporates paragraphs 1 through 62 as if fully stated herein.

64. The United State seeks recovery of monies paid to Defendants under mistake of fact.

65. The United States made payment under the Medicare and Medicaid programs for services rendered under the erroneous belief that Defendants were entitled to payment of such funds. In making such payments, the United States relied upon and assumed Defendants has complied the Medicare and Medicaid rule and regulations and that the claims for Medicare and Medicaid reimbursement were consistent with the relevant regulations. This erroneous belief was material to the United States' decision to pay these claims. In such circumstances, the United States' payment of funds was by mistake and was not authorized.

**SIXTH CAUSE OF ACTION**
(Common Law: Unjust Enrichment)

66. The United States realleges and incorporates paragraphs 1 through 65 as if fully stated herein.

67. By reason of the payment made by the Government in connection with providing reimbursement of Medicare and Medicaid claims based on false statements submitted to the Government by Defendants, Defendants were unjustly enriched. The circumstances of Defendants' receipt of such payments are such that, in equity and good conscience, Defendants should not retain those payments, the amount of which is to be determined at trial.

## PRAYER

WHEREFORE, plaintiff requests that the Court enter judgment in favor of the United States and against the defendant as follows:

A. For violation of the False Claims Act, treble damages, including the costs of investigation and prosecution, and civil penalties as allowed by law;

B. For common law fraud, actual and punitive damages;

C. For negligence, actual and punitive damages;

D. For payment under mistake of fact, actual and punitive damages;

E. For unjust enrichment, actual and punitive damages; and

C. Any other relief deemed just by the court.

Respectfully submitted this 4th day of June, 2014.

ANNE M. TOMPKINS
UNITED STATES ATTORNEY

s\Jonathan H. Ferry
JONATHAN H. FERRY
Assistant United States Attorney
NC Bar No. 39117
Attorney for the United States of America227 West Trade Street, Ste. 1650
Charlotte, NC 28202
Tel: (704) 344-6222

12

Fax: (704) 227-0248
Email: Jonathan.Ferry@usdoj.gov